IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERRANCE J. OUTLAW,                )
                                   )        No. 14 C 08297
                Plaintiff,         )
                                   )
        v.                         )
                                   )        Magistrate Judge Maria Valdez
NANCY A. BERRYHILL, Acting         )
Commissioner of the U.S. Social    )
Security Administration,[1]        )
                                   )
                Defendant.         )

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff Terrance J. Outlaw's ("Plaintiff") claims for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 12] is granted and the Commissioner's cross-motion for summary judgment [Doc. No. 17] is denied.

## BACKGROUND

### I.      Procedural History

Plaintiff filed dual applications for DIB and SSI on September 6, 2011, alleging a disability onset date of November 10, 2008, due to blindness in the left eye-optic nerve and diabetes. (R. 158–67, 185.) His initial applications were denied

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

on October 14, 2011, and again at the reconsideration stage on February 24, 2012. (R. 95–98.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on March 6, 2012. (R. 119.) The hearing was held on December 14, 2012. (R. 30–94.) Plaintiff appeared at the hearing with his attorney and offered testimony. (*Id.*) A vocational expert ("VE") and medical expert ("ME") also appeared and offered testimony. (*Id.*) On April 19, 2013, the ALJ issued a partially favorable written decision, finding Plaintiff disabled as of November 1, 2012, but not before. (R. 9–25.) The Appeals Council ("AC") denied review on April 26, 2014, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). (R. 1–3); *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

## II.    Factual Background[2]

Plaintiff was born on February 14, 1979 and was thirty-three years old at the time of the hearing. (R. 37.)  He has his GED. (*Id.*) Plaintiff was last employed as a laborer, but stopped working in 2012 when he was dismissed from his duties due to poor performance. (R. 42–43.)

### A. Medical Evidence

Plaintiff's first treatment of record is dated January 11, 2007, but his medical notes document a history of left optic neuritis.[3] (R. 257.) It was in January 2007, however, that Plaintiff was diagnosed as completely blind in his left eye. (*Id.*)

---

[2] The following facts from the parties' briefs are undisputed unless otherwise noted.
[3] Neuritis is "an inflammation of the optic nerve." *Dorland's Medical Dictionary*, http://www.dorlands.com (last visited Feb. 15, 2017) [hereinafter *Dorland's*].

Plaintiff's treatment involving his right eye began in 2008. (R. 255.) An MRI taken on September 15, 2008, revealed changes in his right eye that had not be present on previous image scans. (R. 256.) A few years later, on July 25, 2011, Plaintiff presented to Humberto De Leon, M.D., complaining of visual impairment in his right eye that had been worsening for two weeks. (R. 282, 284.) An examination at the emergency department that same day revealed that his vision was 20/200 in his right eye. (R. 287.) Dr. De Leon treated Plaintiff with steroids, which significantly improved his condition. (R. 283, 314.)

On October 13, 2011, Calixto Aquino, M.D. conducted a Physical Residual Capacity Assessment of Plaintiff. (R. 293–300.) Dr. Aquino found that Plaintiff experienced no exertional, manipulative, or communicative limitations. (*Id.*) He also found that Plaintiff had some visual limitations, including limited far acuity[4] and depth perception. (R. 296.) Due to these limitations, Dr. Aquino opined that Plaintiff should avoid concentrated exposure to hazards (including machinery and heights) and all exposure to ladders, ropes, and scaffolds. (R. 295, 297.)

In September 2012, Plaintiff was examined by Jeffery Nichols, M.D., an ophthalmologist. (R. 433–36.) Dr. Nichols' noted that Plaintiff suffered from defective vision[5] in his right visual field, but his examination revealed that all of Plaintiff's right sided visual fields were within normal limits. (R. 434.) He

---

[4] Acuity is "clarity or clearness, especially of the vision." *Dorland's.*
[5] Dr. Nichols uses the term "temporal hemianopia" to describe Plaintiff's condition. (R. 434.) Hemianopia is "defective vision or blindness in half of the visual field of one or both eyes." *Dorland's.*

ultimately opined that Plaintiff suffered from neurosarcoidosis[6]. (R. 435.) Dr. Nichols' examined Plaintiff again a few weeks later at a follow-up appointment on November 8, 2012, and reached virtually identical results. (R. 437–41.)

On December 31, 2012, Dr. Nichols completed a Medical Source Statement where he provided opinions regarding Plaintiff's visual impairment. (R. 513–15.) As of December 2012, Dr. Nichols had been treating Plaintiff every two weeks for one year. (R. 513.) Dr. Nichols opined that Plaintiff could perform work that: (1) never involved depth perception; (2) rarely involved his field of vision; (3) occasionally involved his near acuity, far acuity, and accommodation; and (4) frequently, but not constantly, involved his color vision. (R. 514.) He also opined that Plaintiff was unable to avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, or approaching people. (*Id.*) Lastly, he noted that Plaintiff's attention and concentration would be impacted by his visual impairments. (*Id.*)

Finally, on January 9, 2013, Robert Taub, M.D., completed a Medical Interrogatory where he opined that Plaintiff met Listing 2.03B on, but not before, November 1, 2012. (R. 523–25.) Listing 2.03 involves contraction of the visual field in the better eye.[7]

### B. Plaintiff's Testimony

Plaintiff testified that he is blind in his left eye. (R. 44.) He retains some peripheral vision in his right eye, but he is unable to see toward his nose. (R. 61.)

---

[6] Sarcoidosis is "a chronic, progressive, systemic" lumping of cells. *Dorland's.* Neurosarcoidosis is sarcoidosis in any part of the nervous system. *Dorland's.*

[7] Specifically, an individual meets Listing 2.03B if they have "contraction of the visual field in the better eye, with . . . [a]n MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field."

He opined that his vision loss prevents him from employment because it is unsafe for him to work around others. (R. 57.)

Plaintiff testified that he last worked as a laborer where his job duties included sweeping, light duty wiping, and breaking down boxes. (R. 41–42.) He was hired as a seasonal employee with the possibility of long term employment, but was later dismissed due to poor performance (R. 42.) Plaintiff testified that his employer was not aware that he suffered from visual impairments. (R. 70.)

Plaintiff stated that he experiences eye pain, specifically throbbing in his eyes, four times per week. (R. 67.) He also reported back pain if he sits, stands, or walks for too long. (R. 52.) Plaintiff believes his back pain a result of both his weight gain[8] and two resolved disc slips. (*Id.*)

## C. Vocational Expert's Testimony

A vocational expert ("VE") was also present and offered testimony. (R. 83–93.) The ALJ asked the VE to consider whether jobs would be available for a hypothetical individual with Plaintiff's same age, education, and work experience who could perform work limited to: (1) occasionally lifting and carrying twenty pounds and frequently carrying and lifting ten pounds; (2) sitting, standing, and walking up to six hours in an eight hour day; (3) working with large objects that could be held, grasped, or turned using the entire hand or fingers; (4) rare reading (fifteen or less percent of the time); (5) no work on ladders, ropes, or scaffolding; (6) avoiding all exposure to unprotected heights, hazards, and moving machinery; (7)

---

[8] Plaintiff's weight at the time of the hearing was 300 pounds. (R. 35.) He testified that he had gained forty pounds in a six to seventh month period. (R. 38, 65.)

avoiding open and dangerous conditions; and (8) no driving. (R. 85–86.) The ALJ stated the individual would remain capable of unskilled, routine tasks, and be able to: (1) understand, remember, and carry out simple and routine instructions; (2) maintain attention and concentration for that level of work; (3) make work related decisions and exercise judgement; (5) maintain a consistent pace necessary to perform work successfully; (6) interact with others such as the public, co-workers, and supervisors; and (7) adjust and respond appropriately to routine changes in the work setting. (R. 86.) The VE opined that such an individual could not perform Plaintiff's past work, but that other jobs would be available to the hypothetical person including housekeeper, laundry aide, and host. (R. 87.) The VE further testified that the jobs would remain available if the hypothetical individual was additionally limited to no work on uneven or rough surfaces. (*Id.*)

On cross examination, Plaintiff, through his counsel, asked the VE whether the number of jobs available would be eroded for an individual who took thirty percent longer to perform a task. (R. 90–91.) The VE opined that such a limitation would preclude the individual from employment. (R. 91.) The VE also testified that an individual would not be able to sustain any of the jobs she had previously listed if the individual was consistently bumping into people or tripping over items. (R. 92.)

**D. The ALJ's Decision**

On April 19, 2013, the ALJ issued a partially favorable written determination, finding Plaintiff disabled as of November 1, 2012, but not before. (R.

9–25.) As an initial matter, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act (the "Act") through March 31, 2012. (R. 15.) At step one, the ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since his alleged onset date of November 10, 2008. (R. 16.) At step two, the ALJ found that Plaintiff had the severe impairments of neurosarcoidosis, left eye blindness, history of optic neuritis bilaterally, morbid obesity, and degenerative disc disease. (*Id.*) At step three, the ALJ determined that prior to November 1, 2012, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; however, beginning on November 1, 2012 the severity of Plaintiff's impairments met the criteria of section 2.03B of 20 C.F.R. Part 404, Subpart P, App'x 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926). (R. 15, 24.)

Before step four, the ALJ found that prior to November 1, 2012, Plaintiff had the residual functional capacity ("RFC") to perform light work. (R. 17.) The ALJ also found that Plaintiff's RFC was further limited to: (1) occasionally lifting and carrying twenty pounds, and frequently ten pounds; (2) sitting for six hours and standing and/or walking for six hours in an eight hour workday; (3) never climbing ladders, ropes, or scaffolds, and never working at heights or with hazardous machinery; (4) no work on rough or uneven surfaces; (5) occasionally stooping, crouching, kneeling, and crawling; (6) working with larger objects that could be grasped, held, or turned using the entire hand; and (7) working in jobs that required

minimal or only rare reading (15% or less of the workday). (R. 17–18.) The ALJ further opined that Plaintiff: (1) had the ability to constantly understand, remember, and carry out very short and simple instructions; (2) maintain attention and concentration for extended periods for the work stated above; (3) use judgment to make simple work-related decisions; (4) perform at a consistent pace without an unreasonable number and length of rest periods; (6) could constantly interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (7) could constantly respond appropriately to routine changes in the work setting; and (8) he retained the capacity for work that is unskilled and routine. (*Id.*) At step four, the ALJ concluded that since November 10, 2008, Plaintiff was not capable of performing his past relevant work. (R. 22.) Finally, at step five, the ALJ found that prior to November 1, 2012, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (R. 23.) Specifically, the ALJ found that Plaintiff could have worked as a housekeeper, laundry aide, or host. (*Id.*) Because of this determination, the ALJ found that Plaintiff had not been disabled prior to November 1, 2012, but became disabled on that date and had continued to be disabled through the date of the decision. (R. 24.)

## DISCUSSION

## I.     ALJ LEGAL STANDARD

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps 1–4. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported.") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

Plaintiff asserts four errors: (1) the ALJ failed to support his RFC finding with substantial evidence; (2) the ALJ's credibility analysis was flawed and unsupported by substantial evidence; (3) the ALJ improperly weighed the medical opinion evidence; and (4) the ALJ's finding at step five of the sequential evaluation process was unsupported by substantial evidence. The court finds that the ALJ failed to support his RFC finding with substantial evidence and improperly weighed the medical opinion evidence. Because these conclusions require reversal, the credibility and step five errors need not be addressed at this time.

**A.**     **The ALJ Failed to Support his RFC Finding with Substantial Evidence**

Plaintiff argues that the ALJ failed to support his RFC finding with substantial evidence. (Pl.'s Br. at 7.) Specifically, he asserts that the ALJ failed to consider his right eye impairments when he determined his RFC prior to November 1, 2012. The court agrees.

An RFC is an administrative assessment of what work-related activities an individual can perform despite his limitations. *See* SSR 96-8p; *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 404.1545. A claimant's RFC must be based upon the medical evidence and other evidence in the record. *See id.* When evaluating a claimant's RFC, the ALJ is required to include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts. SSR 96-8p; *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

In his decision, the ALJ mentioned several pieces of medical evidence related to Plaintiff's history of visual impairment in his right eye. For example, the ALJ described Plaintiff's MRI from September 2008, which revealed changes in his right eye that had not been present on previous image scans. (R. 19.) He also acknowledged Plaintiff's presentation to Dr. De Leon in July 2011 for right eye pain and decreased vision. (*Id.*) Additionally, he often indicated Plaintiff's visual acuity at different points of treatment. (R. 20.) While the ALJ properly acknowledged Plaintiff's right eye impairment, he stopped short of the required analysis. 20 C.F.R. § 404.1546(d). In order to build a logical bridge, an ALJ must "sufficiently articulate his assessment of the evidence to assure us that he considered the important

evidence and to enable us to trace the path of his reasoning." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation marks and citations omitted). In the present case, the ALJ recited plenty of Plaintiff's medical history regarding his right eye impairments, but failed to articulate how he factored the evidence of the impairments into his pre-November 1, 2012 RFC determination. *Zenka v. Astrue*, 904 F. Supp. 2d 884, 898 (N.D. Ill 2012). His decision contained no assessment of how his prescribed RFC accounted for the medical records documenting Plaintiff's right eye impairments, Plaintiff's testimony regarding his right eye, or the findings of Plaintiff's doctors. *Zenka*, 904 F. Supp. 2d at 898. Without this assessment, the court cannot trace the ALJ's path of reasoning from the evidence to his conclusions. On remand, the ALJ should describe Plaintiff's evidence and provide a discussion of its relevance to Plaintiff's RFC assessment.

The Commissioner, relying on *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009), responds that the RFC need not be articulated function by function and that a narrative discussion of Plaintiff's symptoms and medical source opinions was sufficient. (Def.'s Mem. at 5.) The Commissioner is correct that the RFC need not be articulated function by function; however, "when determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" 20 C.F.R. 404.1545(a)(2), (b), (c); *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

There can be no doubt that Plaintiff's right eye is a medically determinable impairment. The record contains several medical reports, dated prior to November

1, 2012, which reveal pain and decreasing vision in Plaintiff's right eye. Moreover, Dr. Taub opined that Plaintiff met Listing 2.03B as of November 1, 2012. Due to the progressive nature of his optic condition, it is reasonable to presume Plaintiff exhibited a medically determinable impairment in his right eye prior to that date which the ALJ was required to consider in his RFC determination. Here, the ALJ failed to articulate his consideration of Plaintiff's impairment in his RFC determination or, at a minimum, explain how his assessed RFC already accounted for Plaintiff's right eye impairments. Because the ALJ does not articulate a discussion containing substantial evidence that could support either of these alternatives, the court cannot trace a path of reasoning between the evidence and his RFC conclusions. Thus, we must remand on this issue.

**B.  The ALJ Failed to Properly Weighing the Medical Opinion Evidence**

The ALJ accorded significant weight to the medical opinions of Dr. Jeffery Nichols, M.D., but only after November 1, 2012. (R. 21.) Plaintiff argues that the ALJ improperly weighed Dr. Nichols' medical opinions for the period prior to November 1, 2012. (Pl.'s Br. at 12–13.)

First, Plaintiff argues that Dr. Nichols should have been accorded controlling weight under the regulations. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d

299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. Here, the ALJ suggested that portions of Dr. Nichols' December 2012 Medical Source Statement, and specifically his opinion that Plaintiff's concentration and attention would be frequently impacted by his visual impairments, may have been based on Plaintiff's subjective complaints. (R. 22.) He found that Dr. Nichols' determination was not reflected by his own treatment notes. (*Id.*)

Despite these assertions, the ALJ did not offer "good reasons for discounting" Dr. Nichols' opinions. The ALJ failed to point to any evidence that contradicted Dr. Nichols' opinion regarding Plaintiff's concentration and attention or articulate how his opinion was unsupported by his own treatment notes. Without a more thorough explanation, this court cannot trace a path of reasoning between the evidence and the ALJ's conclusion.

In fact, the ALJ fails to assert that other parts of Dr. Nichols' opinion relating to Plaintiff's visual impairment were inconsistent with the record. In his Medical Source Statement, Dr. Nichols indicated that Plaintiff suffered from loss of temporal field vision in the right eye and complete blindness in the left. (R. 513–15.) Dr. Nichols indicated that in a competitive work situation, Plaintiff could perform work activities occasionally using his far acuity, near acuity, and accommodation, rarely using his field of vision, and never using his depth perception. (R. 514.) Dr. Nichols then indicated that Plaintiff was not capable of avoiding ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles. (*Id.*) This portion of the opinion appears to be consistent with the other

medical evidence of record, including Dr. Aquino's opinion dated October 2011 where he opined Plaintiff has limitations with far acuity and depth perception. The ALJ failed to explain how Dr. Nichols' medical opinions were unsupported by the record for the period prior to November 1, 2012; thus, he failed to build a logical bridge from the evidence to his conclusion that Dr. Nichols' opinion was not entitled to controlling weight.

Moreover, even if the ALJ properly concluded that Dr. Nichols opinion was not entitled to controlling weight because it inconsistent with other medical evidence in the record, he still failed to weigh the opinion using the regulatory factors set forth in 20 C.F.R. § 404.1527(c). Even if an ALJ does not give the treating physician's opinion controlling weight, the ALJ cannot simply disregard it without further analysis. *Campbell*, 627 F.3d at 308. Instead, the ALJ must still determine what value the assessment does merit. 20 C.F.R. § 404.1527; *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See id.*

After rejecting Dr. Nichol's opinion, and thereby failing to give it controlling weight, the ALJ did not discuss any of the other factors set forth in 20 C.F.R. § 404.1527(c) to determine what weight to give Dr. Nichols' other opinions prior to November 1, 2012. The ALJ failed to acknowledge the length or frequency of the

treating relationship between Dr. Nichols and Plaintiff, though evidence demonstrated that Plaintiff had presented to Dr. Nichols twice a week for almost one year. The ALJ also failed to address the nature of the relationship between Plaintiff and Dr. Nichols, including Plaintiff's presentations for examinations and follow-ups. Moreover, he did not articulate his consideration of Dr. Nichols' relevant specialty in ophthalmology. Without a discussion of these factors, he failed to build logical bridge from the evidence to his conclusion.

## C. On Remand, the ALJ Should Evaluate Plaintiff's Credibility in Light of 16-3p

Additionally, the Social Security Administration (the "Administration") has recently updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." (*Id.* at *1.) On remand, the ALJ should re-evaluate Plaintiff's subjective symptoms in light of SSR 16-3p.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This matter is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**                              **ENTERED:**

DATE: <u>**February 28, 2017**</u>          _____
                                             **HON. MARIA VALDEZ**
                                             **United States Magistrate Judge**